**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

Case No. 12-Civ-23744-Middlebrooks/Brannon

WI-LAN USA, INC.
and WI-LAN INC.,

        Plaintiffs,

    v.

TOSHIBA CORPORATION; TOSHIBA
AMERICA, INC.; TOSHIBA AMERICA
ELECTRONIC COMPONENTS, INC.; and
TOSHIBA AMERICA INFORMATION
SYSTEMS, INC.,

        Defendants.

**PLAINTIFFS' OPPOSITION TO TOSHIBA'S *DAUBERT* MOTION TO
PRECLUDE WI-LAN'S DAMAGES EXPERT FROM TESTIFYING IN
<u>CONTRAVENTION OF THE ENTIRE MARKET VALUE RULE</u>**

**TABLE OF CONTENTS**

# Contents

I.      INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND................................................................................ 2

III.   APPLICABLE LAW ........................................................................................... 3

       A.     Rule 702 and Daubert ............................................................................ 3

       B.     *Georgia-Pacific* Factors........................................................................ 4

       C.     Entire Market Value Rule ...................................................................... 5

IV.   ARGUMENT....................................................................................................... 5

       A.     The EMVR is Not Implicated by Mr. Wagner's Testimony ................. 5

       B.     Mr. Wagner's Consideration of Total Sales of the Accused Product
             is Admissible under *Daubert* and *Georgia Pacific* Factor 8................................. 6

V.     CONCLUSION.................................................................................................... 7

# TABLE OF AUTHORITIES

**CASES**

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007)...................................................................................6

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)................................. passim

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)................................................................. passim

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
900 F. Supp. 2d 1160 (D. Nev. 2012)..................................................................4, 6

*Hanson v. Alpine Valley Ski Area, Inc.*,
718 F.2d 1075 (Fed. Cir. 1983).............................................................................4

*Honeywell Int'l Inc. v. U.S.*,
107 Fed. Cl. 659 (Fed. Cl. 2012) .......................................................................4, 6

*LaserDynamics, Inc. v. Quanta Comp., Inc.*,
694 F.3d 51 (Fed. Cir. 2012)................................................................................6

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009).............................................................................5

*Multimedia Patent Trust v. Apple, Inc.*,
2012 WL 5873711 (S.D. Cal. Nov. 20, 2012) .........................................................5

*Ortiz v. Home Depot USA, Inc.*,
12-61512-CIV, 2013 WL 5774873 (S.D. Fla. Oct. 25, 2013) ....................................3

*Schneider (Europe) AG v. Scimed Life Systems, Inc.*,
852 F. Supp. 813 (D. Minn. 1994) .....................................................................4, 6

*Skye v. Maersk Line Ltd. Corp.*,
11-21589-CIV, 2012 WL 1252523 (S.D. Fla. Apr. 13, 2012)....................................4

*Ziggity Sys., Inc. v. Val Watering Sys.*,
769 F. Supp. 752 (E.D. Pa. 1990) ......................................................................4, 6

**STATUTES**

35 U.S.C. § 284.................................................................................................4

**OTHER AUTHORITIES**

Rule 702 .................................................................................................................................3, 5, 7

## I.   INTRODUCTION

Plaintiffs Wi-LAN USA, Inc. and Wi-LAN Inc. (collectively, "Wi-LAN" or "Plaintiffs"),

by and through there undersigned counsel, respectfully submit this memorandum in opposition to

Toshiba's *Daubert* Motion to Preclude Wi-LAN's Damages Expert from Testifying in

Contravention of the Entire Market Value Rule ("Motion").  This Court should deny Toshiba's

Motion because the testimony of Wi-LAN's expert, Michael Wagner, does not implicate the

entire market value rule ("EMVR"), let alone violate the rule as the Motion alleges.  Mr. Wagner

opines that damages should be calculated as a per unit royalty, not as a percentage of revenue

(*i.e.*, not as a percentage of the entire market value of the accused products).  Toshiba's own

damages expert, W. Todd Schoettelkotte, also opines that damages should be calculated as a per

unit royalty, rather than as a percentage of revenue derived from the accused products.

Consequently, the parties are in agreement that the EMVR is not implicated.  Toshiba bases its

allegation that Mr. Wagner violated the EMVR on a single sentence in his 76-page report, which

Mr. Wagner stated was a "check" calculation expressed in percentage form.  Wi-LAN, however,

has repeatedly stated – at deposition and in a proposed stipulation[1] – that Mr. Wagner will not

testify about the contents of this single sentence or about the "check" calculation.   As a result,

there is no EMVR issue in this case.

In addition to seeking exclusion of the "check" calculation – about which there is no

dispute – Toshiba also seeks to preclude Mr. Wagner from testifying about Toshiba's total

revenues from sales of the accused products.  However, under well-established precedent,

Toshiba's total revenues from sales of the accused products is not just relevant but crucial to the

---

[1] The parties attempted to reach agreement on a stipulation, but were unsuccessful.  *See* Declaration of Kent T. Dallow in Support of Plaintiff's Opposition to Toshiba's *Daubert* Motion to Preclude Wi-LAN's Damages Expert from Testifying in Contravention of the Entire Market Value Rule, ¶ 5, Ex. D (hereinafter "Dallow Decl. ¶ __").

"commercial success" factor of the *Georgia-Pacific* test.  Indeed, Toshiba's own damages expert, Mr. Schoettelkotte, also supports his per unit royalty analysis by reference on multiple occasions to total sales of the accused products.  Because both parties' experts properly rely on Toshiba's revenue under *Georgia-Pacific*, Toshiba's Motion should be denied.

## II.   FACTUAL BACKGROUND

On September 13, 2013, Wi-LAN served the Expert Report of its damages expert, Michael Wagner.  *See* Dallow Decl. ¶ 2, Ex. A.  Mr. Wagner opines that



*Id.*

*Id.*

In reaching his conclusions, Mr. Wagner analyzed each of the *Georgia-Pacific* factors, including "commercial success" under *Georgia-Pacific* Factor 8.  *Id.*  Mr. Wagner opined that

*Id.*  Mr. Wagner also referenced Figure 2 in ¶ 134, which included

*Id.*  Based on his analysis,

Mr. Wagner concluded that                                                       and based on that

factor along with other factors taken into consideration from the *Georgia-Pacific* analysis, he

opined that the reasonable royalty rate                                     *Id.*  On page 71 of 76, in a

single sentence, Mr. Wagner stated that his per unit royalty results in ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮  *Id.*  At his deposition, Mr. Wagner stated that this was a ▮▮▮▮▮▮

▮▮▮▮▮▮▮  *Id.* at ¶ 3, Ex. B.  He also stated that ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id.*

In arriving at a per unit royalty ▮▮▮▮ Toshiba's damages expert, Mr. Schoettelkotte,

considered the same *Georgia-Pacific* factors.  *Id.* at ¶ 4, Ex. C.  Like Mr. Wagner,

Mr. Schoettlkotte also cited to Toshiba's revenues in support of his analysis on at least four

occasions: (1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ (2) in Schedule 4, which provides ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ (3) in Schedule 8, which provides ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and

(4) in ¶ 70, where he – like Mr. Wagner – uses the above-mentioned sales to conclude that

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮  *Id.*

## III.   APPLICABLE LAW

### A.   Rule 702 and Daubert

"A trial court determining the admissibility of expert testimony under Rule 702 must

engage in a three-part inquiry, considering whether '(1) the expert is qualified to testify

competently regarding the matters he intends to address; (2) the methodology by which the

expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry

mandated in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d

469 (1993); and (3) the testimony assists the trier of fact, through the application of scientific,

technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'"

*Ortiz v. Home Depot USA, Inc.*, 12-61512-CIV, 2013 WL 5774873, at *2 (S.D. Fla. Oct. 25,

2013) *quoting Rosenfeld v. Oceania Cruises, Inc.,* 654 F.3d 1190, 1193 (11th Cir. 2011)

(brackets omitted).  "The burden is on the proponent of the expert testimony to show, by a

preponderance of the evidence, that the testimony satisfies each prong." *Skye v. Maersk Line Ltd.*

*Corp.*, 11-21589-CIV, 2012 WL 1252523, at *2 (S.D. Fla. Apr. 13, 2012) *citing Hendrix ex rel.*

*G.P. v. Evenflo Co. Inc.,* 609 F.3d 1183, 1194 (11th Cir. 2010).

   **B.**  ***Georgia-Pacific* Factors**

   A successful plaintiff in a patent infringement suit is entitled to "damages adequate to

compensate for the infringement, but in no event less than a reasonable royalty."  35 U.S.C. §

284.  A reasonable royalty contemplates a hypothetical negotiation between the patentee and the

infringer at the time just before infringement began.  *Hanson v. Alpine Valley Ski Area, Inc.*, 718

F.2d 1075, 1078 (Fed. Cir. 1983).  The factors considered in a hypothetical negotiation are

derived from the well-established *Georgia-Pacific* case and include, among many factors, Factor

8: "[t]he established profitability of the product made under the patent; its commercial success;

and its current popularity."  *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116,

1120 (S.D.N.Y. 1970).  Courts have widely accepted total sales of the accused product as one

factor in establishing commercial success.  *See, e.g., Georgia-Pacific,* 318 F. Supp. at 1123

(describing annual sales of patented product and stating "[t]he Court of Appeals characterized

the commercial success of Weldtex as a factor of 'very great significance'"); *Halo Elecs., Inc. v.*

*Pulse Elecs., Inc.*, 900 F. Supp. 2d 1160, 1167 (D. Nev. 2012) ("Factor 8 considers, among other

things, the commercial success of the product, and the worldwide sales figures are relevant to

that determination").[2]

---

[2] *See also Honeywell Int'l Inc. v. U.S.*, 107 Fed. Cl. 659, 685 (Fed. Cl. 2012) ("As to factor 8, [U.S. government damages expert] Mr. Green accepted that Honeywell sold 1116 CMFD units to Lockheed Martin and the Government during 1996-1999, for a total of $56 million …."); *Schneider (Europe) AG v. Scimed Life Systems, Inc.*, 852 F. Supp. 813, 849 (D. Minn. 1994) ("Schneider's Monorail sales may be

### C.     Entire Market Value Rule

"The entire market value rule allows for recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) *quoting TWM Mfg. Co., Inc. v. Dura Corp.,* 789 F.2d 895, 901 (Fed. Cir. 1986). The entire market value rule does not apply where a per unit royalty relies on the number of units sold rather than the revenues or profits of an entire accused product. *See, e.g., Multimedia Patent Trust v. Apple, Inc.*, 2012 WL 5873711, at *4-5 (S.D. Cal. Nov. 20, 2012).

## IV.     ARGUMENT

### A.     The EMVR is Not Implicated by Mr. Wagner's Testimony

Mr. Wagner does not rely on the total sales, *i.e.,* the "entire market value" of the accused products to arrive at ▬▬▬▬▬▬▬▬▬ and, therefore, the EMVR is not implicated by Mr. Wagner's testimony. *See, e.g., Multimedia Patent Trust*, 2012 WL 5873711, at *4-5 (EMVR does not apply where per unit royalty relies on number of units sold rather than revenues or profits of an entire accused product). Rather, Mr. Wagner determined that a per unit royalty was appropriate based on his analysis of the *Georgia Pacific* factors. *See* Dallow Decl., ¶ 2, Ex. A. Toshiba's expert, Mr. Schoettelkotte, reached the same conclusion (although his conclusion as to the per unit rate differed). *See* Dallow Decl., ¶ 4, Ex. C. This methodology is relevant and reliable in satisfaction of Rule 702 and *Daubert* standards. *See, e.g., Multimedia Patent Trust*, 2012 U.S. Dist. LEXIS at *17-20 (Denying defendants' Daubert motion to exclude expert testimony of $1.50 per unit royalty for violation of EMVR because Plaintiff's expert did not seek

---

used as a basis for evaluating the established profitability, commercial success, and popularity …. SciMed's infringing sales may also be used as a basis for evaluating [Factor 8]."); *Ziggity Sys., Inc. v. Val Watering Sys.*, 769 F. Supp. 752, 827 (E.D. Pa. 1990) ("As evidenced by each parties' sales, the patented drinker has remained popular.").

a royalty rate based on a percentage of Defendants' revenues or profits, but rather on total units sold).  Since Wi-LAN has stated – at deposition and in a proposed stipulation[3] – that Mr. Wagner will not testify about the contents of his "reasonableness check" calculation, there simply is no EMVR issue presented by this case.

> **B.** **Mr. Wagner's Consideration of Total Sales of the Accused Product is Admissible under *Daubert* and *Georgia Pacific* Factor 8**

The Federal Circuit has consistently sanctioned the use of the *Georgia-Pacific* factors to "frame the reasonable royalty inquiry."  *See, e.g., LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 60 n. 2 (Fed. Cir. 2012); *see also Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314-15 n.8 (3d Cir. 2007) ("The reasonableness of royalties is an inquiry that courts routinely undertake using the 15-factor test set forth in *Georgia-Pacific* ….").  Accordingly, it is not improper for an expert to consider the total sales of an accused infringing product; rather, it is expressly endorsed under *Georgia-Pacific*.  *See, e.g., Georgia-Pacific,* 318 F. Supp. at 1123 (describing annual sales of patented product and stating "[t]he Court of Appeals characterized the commercial success of Weldtex as a factor of 'very great significance'"); *see also Halo Elecs., Inc.,* 900 F. Supp. 2d at 1167 (Commercial success Factor 8 considering worldwide sales); *Honeywell Int'l Inc.,* 107 Fed. Cl. at 685 (Damages expert accepted as evidence of commercial success Factor 8 sales of $56 million); *Schneider (Europe) AG*, 852 F. Supp. at 849 (Considering patentee and infringer sales as part of Factor 8 analysis); *Ziggity Sys., Inc.*, 769 F. Supp. at 827 (Considering sales as evidence of commercial success).

Here, both parties' experts consider Toshiba's total sales of accused products in support of their respective *Georgia-Pacific* analysis.  In ¶ 134 of his report, Mr. Wagner opined that the

███████████████████████████████████████████████████████████

---

[3] *See* footnote 1.



. *See* Dallow Decl. ¶ 2, Ex. A.  Mr. Wagner

also referenced Figure 2 in ¶ 134,

. *Id*.  Not only is this is perfectly proper under

well-established precedent, including the precedent cited above, but Toshiba's expert Mr.

Schoettelkotte used Toshiba's sales for the exact same purpose.

Like Mr. Wagner, Mr. Schoettlkotte also cited to Toshiba's revenues in support of his

analysis on numerous occasions.  In ¶ 23 of his report, Mr. Schoettelkotte noted that

*Id*. at ¶ 4, Ex. C.   Mr. Schoettelkotte

further noted in Schedule 4, which provides a

*Id*.  In Schedule 8, which provides

.  Mr.

Schoettelkotte ties this all together in ¶ 70 of his report where he – like Mr. Wagner – uses the

above-mentioned sales as the basis for the statement tha

*Id*.

Accordingly, Toshiba's own expert uses very similar sales data for the exact same purpose as

Mr. Wagner, which is permissible under *Georgia-Pacific* and its progeny, and is therefore

sufficiently reliable and useful to satisfy Rule 702 and *Daubert* standards.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs Wi-LAN USA Inc. and Wi-LAN Inc. respectfully

request that Toshiba's Motion be denied.

Dated:  November 21, 2013

Respectfully submitted,

*Attorneys for the Plaintiffs:*

CARLSON & LEWITTES, P.A.


By:  s/ Curtis Carlson
        Curtis Carlson, Fla. Bar. No. 236640
        1200 Suntrust International Center
        One Southeast Third Avenue
        Miami, FL  33131
        Telephone:  305-372-9700
        Facsimile:  305-372-8265
        E-mail:  carlson@carlson-law.net

**OF COUNSEL**

KILPATRICK TOWNSEND & STOCKTON LLP

David E. Sipiora
Brian P. O'Donnell
Charles A. Pannell
Kent T. Dallow
1400 Wewatta Street, Suite 600
Denver, CO  80202
(303) 571-4000

8

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2013, a true and correct copy of the foregoing was filed and served with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to the following:

Doris Johnson Hines
Joyce Craig
Emmanuel Azih
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 408-4000
Fax: (202) 408-4400
Emails: dori.hines@finnegan.com; joyce.craig@finnegan.com; emmanuel.azih@finnegan.com

Terri Meyers
KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.
Miami Center - 17th Floor
Miami, FL 33131
Tel: (305) 379-9000
Fax: (305) 379-3428
Email: tmeyers@klugerkaplan.com


                                            /s Curtis Carlson
                                              Curtis Carlson


65838479V.11

9