UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 12-Civ-23744-Middlebrooks/Brannon

| | |
|---|---|
| WI-LAN USA, INC. and WI-LAN INC., <br><br> Plaintiffs, <br><br> v. <br><br> TOSHIBA CORPORATION; TOSHIBA AMERICA, INC.; TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC.; and TOSHIBA AMERICA INFORMATION SYSTEMS, INC., <br><br> Defendants. | |

**PLAINTIFFS' OPPOSITION TO TOSHIBA'S *DAUBERT* MOTION
TO PRECLUDE WI-LAN'S EXPERTS FROM TESTIFYING IN
<u>CONTRAVENTION OF FED. R. EVID. 702(A)</u>**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | APPLICABLE LAW | 3 |
| IV. | ARGUMENT | 4 |
| | A. The Challenged Expert Testimony Is Relevant and Will Be Helpful to the Trier of Fact On the Question of Infringement | 4 |
| V. | CONCLUSION | 9 |

# TABLE OF AUTHORITIES

**CASES**

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
   692 F.3d 1301 (Fed. Cir. 2012)......................................................................................7

*City of Tuscaloosa v. Harcros Chems., Inc.*,
   158 F.3d 548 (11th Cir. 1998) .......................................................................................6

*Coral Way, L.L.C. v. Jones*,
   No. 05-21934-CIV, 2006 WL 5249734 (S.D. Fla. Oct. 17, 2006) ...........................8

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)................................................................................................ 4-6

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970).............................................................................8

*In re Bankatlantic Bancorp, Inc. Sec. Litig.*,
   No. 07-61542-CIV, 2010 WL 6352662 (S.D. Fla. Aug. 30, 2010) ..................... 8-9

*Meneely v. Denman Tire Corp.*,
   GCA 93-10151-MMP, 1995 WL 902213 (N.D. Fla. July 20, 1995)..........................6

*Minks v. Polaris Indus., Inc.*,
   546 F.3d 1364 (Fed. Cir. 2008)....................................................................................8

*Ortiz v. Home Depot USA, Inc.*,
   No. 12-61512-CIV, 2013 WL 5774873 (S.D. Fla. Oct. 25, 2013) ...........................4

*Rosenfeld v. Oceania Cruises, Inc. .*,
   654 F.3d 1190 (11th Cir.2011) ....................................................................................4

*Rutledge v. NCL (Bahamas), Ltd.*,
   464 F. App'x 825 (11th Cir. 2012)...............................................................................4

*United States v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004) ................................................................................ 4-6

**STATUTES**

Patent Act, 35 U.S.C. § 271(b) ...........................................................................................6

**OTHER AUTHORITIES**

Fed. R. Evid. 401 ...................................................................................................................4

Fed. R. Evid. 702 ...................................................................................................................3

Fed. R. Civ. P. 26..................................................................................................................8

## I. INTRODUCTION

Plaintiffs Wi-LAN USA, Inc. and Wi-LAN Inc. (collectively, "Wi-LAN" or "Plaintiffs"), by and through their undersigned counsel, respectfully submit this memorandum in opposition to Toshiba's *Daubert* Motion to Preclude Wi-LAN's Experts from Testifying in Contravention of Fed. R. Evid. 702(a) ("Motion"). Toshiba's Motion is misleading because it misstates the content and significance of the expert reports at issue. The Motion should be denied because the expert opinions at issue are relevant to assist the triers of fact in determining both the existence and extent of Toshiba's direct and indirect infringement. These opinions do more than merely establish that Toshiba televisions receive interlaced signals, as Toshiba incorrectly states. In fact, they establish the prevalence of interlaced signals in the market and will assist the trier of fact in determining the existence and extent of direct infringement by users of Toshiba televisions. Proof of this direct infringement, in turn, forms the foundation for showing Toshiba's indirect infringement by inducing these infringing activities.

Toshiba never approached Wi-LAN to seek a stipulation regarding these reports and, prior to filing its *Daubert* Motion, never offered to stipulate that all of its accused televisions receive interlaced signals. In order to obviate the need for adjudication of this Motion, Wi-LAN has offered a written stipulation to Toshiba that fairly summarizes and sets forth as fact the basic elements of the challenged expert testimony. Toshiba has not yet stated that it will accept the stipulation, so Wi-LAN is proceeding with the filing of this opposition. If a stipulation is agreed upon, Wi-LAN will promptly notify the Court. Absent word of such stipulation, however, Wi-LAN asks that the Court deny Toshiba's Motion because it is without merit.

## II.     FACTUAL BACKGROUND

On October 15, 2012, Wi-LAN filed its Complaint for Patent Infringement against Toshiba, in which Wi-LAN accuses Toshiba of direct infringement and inducing direct infringement of U.S. Patent No. 6,359,654 ("'654 Patent").[1] Dkt. No. 1. In support of Wi-LAN's claims for infringement, Wi-LAN served on Toshiba the expert reports of Dennis Wallace, Martin Frankel, and Craig Tanner, respectively, on September 13, 2013. *See* Declaration of Kent. T. Dallow in Support of Plaintiffs' Opposition to Toshiba's Motion ¶¶ 2-4, Exs. A-C ("Dallow Decl. ¶ __").

Dennis Wallace is the managing partner of the engineering firm of Meintel, Sgrignoli, & Wallace ("MSW"). Mr. Wallace was "asked to analyze data collected through an Engineering Survey regarding the presence of interlaced or progressive signals in over-the-air television broadcast streams." Dallow Decl. ¶ 1, Ex. A. The Engineering Survey was originally conducted in September and October 2010 in connection with the case *Wi-LAN, Inc. v. LG Electronics, Inc. and LG Electronics U.S.A., Inc.*, Case No. 10-432(LAK)(AJP) (S.D.N.Y.), for the purpose of collecting data regarding "the presence of the RRT1 table in the television stream." *Id.* Importantly, in collecting such data relating to the "RRT1 table," MSW also collected data which included "the video format (including the scanning mode) of every valid subprogram that is being conveyed."[2] *Id.* Wi-LAN subsequently retained Wallace as an expert in this action to analyze the subset of the Engineering Survey data related to video formats and scanning modes

---

[1] Wi-LAN filed an Amended Complaint for Patent Infringement on February 15, 2013, which also includes claims against Toshiba for direct and induced infringement. Dkt. No. 48.

[2] Mr. Tanner notes in his report that ███████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
███████████████████████████████████ Dallow Decl. ¶ 4, Ex. C.

2

for the purposes of determining "what percentage of subprograms were in the interlaced scanning mode," and that analysis forms the basis of his expert report in this matter.  *Id*.

Martin Frankel is a Professor of Statistics and Computer Information Systems at Baruch College, and was "asked to perform statistical analysis based upon the results of an Engineering Survey conducted by [MSW]" and to "render an opinion regarding the number and percentage of TV Markets in the contiguous 48 states and the District of Columbia where at least one, at least two and at least three stations are broadcasting high definition interlaced signals." Dallow Decl. ¶ 3, Ex. B.  Mr. Frankel also offered an opinion "regarding the proportion or percentage of stations in the U.S. that are broadcasting high definition interlaced signals among all stations that are broadcasting high definition signals." *Id*.  Ultimately, Mr. Frankel concluded that "at least 94.9% of all U.S. TV households" are in markets where there is at least one interlaced high-definition signal, and that 85.9% of these markets have at least two such signals, and 82.8% have three. *Id*.

Craig Tanner, who is an expert consultant in the field of television technology and standards, analyzed the Wallace and Frankel reports and concluded that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dallow Decl. ¶ 4, Ex. C.  Mr. Tanner further concludes that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*.

## III. <u>APPLICABLE LAW</u>

"A trial court determining the admissibility of expert testimony under Rule 702 must engage in a three-part inquiry, considering whether '(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the

expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'" *Ortiz v. Home Depot USA, Inc.*, No. 12-61512-CIV, 2013 WL 5774873, at *2 (S.D. Fla. Oct. 25, 2013), *quoting Rosenfeld v. Oceania Cruises, Inc. .,* 654 F.3d 1190, 1193 (11th Cir.2011) (brackets omitted).

Whether an expert's opinions will assist the trier of fact "goes primarily to relevance," *Daubert*, 509 U.S. at 591, and therefore, the question is not whether the proffered evidence ultimately persuades the trier of fact but whether it goes to a material aspect of the litigation. *Rutledge v. NCL (Bahamas), Ltd.*, 464 F. App'x 825, 829 (11th Cir. 2012); *see also* Fed. R. Evid. 401 (Evidence is relevant so long as it has "any tendency to make a fact more or less probable than it would be without the evidence."). Furthermore, expert testimony assists the trier of fact "if it concerns matters that are beyond the understanding of the average lay person." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004)

## IV.  ARGUMENT

### A.  The Challenged Expert Testimony Is Relevant and Will Be Helpful to the Trier of Fact On the Question of Infringement

Toshiba claims that the Wallace and Frankel reports should be excluded as irrelevant and unhelpful to the trier of fact because they "do nothing more than establish an undisputed fact, i.e., that Toshiba televisions receive interlaced signals as inputs." Motion at 3. Toshiba is incorrect. These reports apply "scientific, technical, or other specialized knowledge," "concern matters that are beyond the understanding of the average layperson," and provide relevant evidence to the determination of direct and induced infringement. *Daubert,* 509 U.S. at 589;

4

*Frazier*, 387 F.3d at 1262. Accordingly, these reports will assist the trier of fact in understanding the evidence and determining a fact in issue. *Daubert,* 509 U.S. at 589.

First, it is important to note that Toshiba does not challenge Messrs. Wallace and Frankel's qualifications as experts.[3] Mr. Wallace is a Certified Broadcast Television Engineer by the Society of Broadcast Engineers, is a member of the IEEE Broadcast Technology Society, and has an extensive background in digital television systems. Dallow Decl. ¶ 2, Ex. A. Mr. Wallace is an expert in "Broadcast television, RF field measurements, and transport streams" and has testified previously as an expert on these topics without challenge. Dallow Decl. ¶ 5, Ex. D. Mr. Frankel has a bachelor's degree in Mathematics, a master's degree in Mathematical Statistics, a Ph.D. in Mathematical Sociology, and has been a Professor of Statistics and Computer Information Systems at Baruch College since 1980. Dallow Decl. ¶ 3, Ex. B. Mr. Frankel has been qualified as an expert "involving the analysis, presentation and interpretation of statistical evidence," and has testified on numerous occasions as an expert. Dallow Decl. ¶¶ 3, 6, Exs. B, E. Thus, Messrs. Frankel and Wallace clearly have "scientific, technical, or other specialized knowledge," and they have applied that expertise in their respective expert reports, as discussed below. *Daubert,* 509 U.S. at 589

Second, in his report, Mr. Wallace applied his expertise to provide valuable testing and analysis of signals for television stations. Dallow Decl. ¶ 2, Ex. A. Wallace and MSW first determined which digital television broadcast stations were associated with each of the sample markets provided by Mr. Frankel. *Id*. Wallace and MSW then obtained the transmitter locations for each station and sent out field engineers to collect signal information from each station. *Id*. These engineers recorded and archived the "entire digital transport stream" for each transmitter.

---

[3] Additionally, Toshiba does not challenge the methodology employed by either Mr. Wallace or Mr. Frankel.

5

*Id*.  Wallace and MSW subsequently analyzed this "digital transport stream" and extracted the necessary data from this stream to determine the video format and scanning mode (progressive or interlaced) for each signal.  *Id*.  This process, and Mr. Wallace's related analysis and opinions, clearly involve "scientific, technical, or other specialized knowledge" and "concern matters that are beyond the understanding of the average lay person."  *Daubert,* 509 U.S. at 589; *Frazier*, 387 F.3d at 1262; *see also Meneely v. Denman Tire Corp.*, GCA 93-10151-MMP, 1995 WL 902213 (N.D. Fla. July 20, 1995) (Expert's "application of his engineering knowledge . . . is technical knowledge beyond the ken of the average layperson and will accordingly 'assist the trier of fact to understand the evidence or to determine a fact in issue.'").

Mr. Frankel then used Wallace's data, analysis, and opinions, and performed a complex statistical analysis to form his own expert opinions.  Dallow Decl. ¶ 3, Ex. B.  Specifically, Mr. Frankel was able to determine that "at least 94.9% of all U.S. TV households" are in markets where there is at least one interlaced high-definition signal, and that 85.9% of these markets have at least two such signals, and 82.8% have three interlaced high-definition signals.  *Id*.  Such statistical analysis has been found to involve "scientific, technical, or specialized expertise" and "would be helpful to a trier of fact."  *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 565 (11th Cir. 1998) (holding that statistician's expert testimony, "through the application of scientific, technical, or specialized expertise . . . would be helpful to a trier of fact").

Both the Wallace and Frankel reports are relevant to the determination of direct and induced infringement.  Initially, these reports are relevant to the determination of direct infringement as Toshiba admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dallow Decl. ¶ 7, Ex. F. Additionally, the induced infringement provision of the Patent Act, 35 U.S.C. § 271(b), provides

that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." However, "inducement gives rise to liability only if the inducement leads to actual infringement. That principle, that there can be no indirect infringement without direct infringement, is well settled." *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012). The Frankel and Wallace reports bear directly on the issue of direct infringement, for, as Toshiba now has acknowledged, the reports establish that its accused television products receive interlaced signals. In addition, the reports demonstrate the prevalence of the broadcast of interlaced signals throughout the U.S. Evidence of the volume of broadcasting is helpful to determine whether Toshiba directly infringes the '654 Patent by testing the accused products, whether Toshiba's customers directly infringe the '654 Patent, and whether Toshiba induces such infringement.

In fact, Mr. Tanner, Wi-LAN's expert on infringement, reviewed the Wallace and Frankel reports and accepted their conclusions. Dallow Decl. ¶ 4, Ex. C. Based in part on these reports, Mr. Tanner concludes that, 

*Id*. Accordingly, Mr. Tanner concludes that,

███████████████████████████████████████████████████████████

██████████████████████████████████████[4] *Id.*

Toshiba makes the bald allegation that these reports "are unrelated to the facts in issue." Motion at 3. As discussed above, this is simply not the case. These reports directly address material facts of the case, namely, whether Toshiba directly infringes, whether Toshiba's customers directly infringe the '654 Patent and, relatedly, whether Toshiba has engaged in the inducement of infringement.

The cases that Toshiba cites are clearly distinguishable. First, Defendants cite to *Coral Way, L.L.C. v. Jones*, No. 05-21934-CIV, 2006 WL 5249734, at *1 (S.D. Fla. Oct. 17, 2006) in support of their argument, but *Coral Way* involved a questionable expert report in which the court noted that "[i]t is arguable whether or not [the report] . . . complies with Rule 26's requirements." *Id.* at *2. Furthermore, the damages issue before the court centered on a "$2.5 million reduction in the contract price for the Brickell View Phase I property" and Coral Way attempted to introduce evidence of the fair market value of the "Phase II properties," which the court noted "has no bearing on any genuine issue of material fact in dispute." *Id.* In this case, the expert reports at issue comply with the requirements of Rule 26 and are directly related to factual issues concerning infringement of the '654 Patent.

Second, Defendants cite to *In re Bankatlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2010 WL 6352662, at *1 (S.D. Fla. Aug. 30, 2010), for support, but *Bankatalantic* involves

---

[4] In addition to supporting Wi-LAN's infringement claims, the shear prevalence of interlaced signals will assist the jury in determining the importance of the invention and the extent it is used. The extent of use is one factor in the *Georgia-Pacific* factors. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) ("11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use."); *see also* between the patentee; *see also Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008).

8

distinguishing factors. In Bankatlantic, a party offered expert testimony regarding the economic status in Florida and attempted to argue that a particular "stock declined not because the truth was revealed regarding the risk to its land portfolio but because of the effect of the general economic decline." *Id.* at *3. The court held that there were numerous issues with this testimony. Initially, the court concluded that the evidence the expert provided "of Florida and U.S. economic measures appear to be nothing more than the parroting of figures taken from other sources" and that the expert's "experience and expertise as an economist is not required, and indeed was not provided, to interpret such evidence." *Id.* The court further held that this evidence was "too broad – both temporally and in terms of subject matter." *Id* at *4.

In contrast, in this case, the data proffered by Frankel and Wallace directly relates to the time frame at issue, as indicated by Mr. Tanner, and goes directly to the subject matter at issue. Such evidence may be of assistance to the jury in its determination that Toshiba and Toshiba's customers directly infringe the '654 Patent. Thus, the cases Toshiba cites are distinguishable from the facts of the present case.

## V. **CONCLUSION**

The Wallace and Frankel reports apply "scientific, technical, or specialized expertise," "concern matters that are beyond the understanding of the average lay person," and provide relevant evidence of to the determination of infringement and damages, thereby assisting the trier of fact in understanding the evidence and determining a fact in issue. For the foregoing reasons, Plaintiffs Wi-LAN USA Inc. and Wi-LAN Inc. respectfully request that Toshiba's Motion be denied.

Dated: November 21, 2013    Respectfully submitted,

*Attorneys for the Plaintiffs:*

CARLSON & LEWITTES, P.A.


By: s/ Curtis Carlson
    Curtis Carlson, Fla. Bar. No. 236640
    1200 Suntrust International Center
    One Southeast Third Avenue
    Miami, FL  33131
    Telephone:  305-372-9700
    Facsimile:  305-372-8265
    E-mail:  carlson@carlson-law.net

**OF COUNSEL**
KILPATRICK TOWNSEND & STOCKTON LLP
David E. Sipiora
Brian P. O'Donnell
Charles A. Pannell
Kent T. Dallow
1400 Wewatta Street, Suite 600
Denver, CO  80202
(303) 571-4000

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 21, 2013, a true and correct copy of the foregoing was filed and served with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to the following:

Doris Johnson Hines
Joyce Craig
Emmanuel Azih
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 408-4000
Fax: (202) 408-4400
Emails: dori.hines@finnegan.com; joyce.craig@finnegan.com; emmanuel.azih@finnegan.com

Terri Meyers
KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.
Miami Center - 17th Floor
Miami, FL 33131
Tel: (305) 379-9000
Fax: (305) 379-3428
Email: tmeyers@klugerkaplan.com

                /s Curtis Carlson
                  Curtis Carlson

65826506V.8

11