UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 12-Civ-23744-Middlebrooks/Brannon

WI-LAN USA, INC.
and WI-LAN INC.,

        Plaintiffs,

   v.

TOSHIBA CORPORATION; TOSHIBA
AMERICA, INC.; TOSHIBA AMERICA
ELECTRONIC COMPONENTS, INC.; and
TOSHIBA AMERICA INFORMATION
SYSTEMS, INC.,

        Defendants.

**PLAINTIFFS' MOTIONS *IN LIMINE***

# **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................... 1

II. ARGUMENT ..................................................................................................................... 2

   A.  Motion *in Limine* No. 1:  Defendants Should Be Precluded From Referring To Wi-LAN In A Derogatory Manner, Including But Not Limited To Referring To Wi-LAN As A "Patent Troll," "Patent Pirate," "Patent Assertion Entity," or "Non-Practicing Entity" ..... 2

   B.  Motion *in Limine* No. 2:  Defendants' Experts Should Be Precluded From Testifying As To The Existence Of Acceptable, Non-Infringing Alternatives ......................................... 3

   C.  Motion *in Limine* No. 3:  Defendants Should Be Precluded From Offering Any Expert Testimony, Including But Not Limited To Non-Infringement, Invalidity, Acceptable Non-Infringing Alternatives, By Witnesses Who Have Not Submitted An Expert Report or Rule 26(a)(2)(C) Disclosure ............................................................................................. 4

   D.  Motion *in Limine* No. 4:  The Jury Should Be Instructed That Toshiba Had Knowledge of the Patents-in-Suit No Later Than October 15, 2006 ....................................................... 5

   E.  Motion *in Limine* No. 5:  Defendant Should Be Precluded From Objecting To The Time Warner Cable Inc.'s ("TWC") Set-Top Box Manuals Obtained from Time Warner's Website As Not Authentic And Inadmissible ..................................................................... 6

   F.  Motion *in Limine* No. 6: Defendants Should Be Precluded From Objecting To The Customer Call Center Records Obtained From Toshiba And Customer Comments Obtained from Toshiba's Website As Not Authentic and Inadmissible ............................. 7

   G.  Motion *in Limine* No. 7:  For Jury Instruction That Toshiba Failed To Produce A Witness On Testing And Should Be Considered To Have Tested All Accused Televisions Sold In The U.S. With Interlaced Signals And That Defendants Should Be Precluded from Arguing That Toshiba's Direct Infringement of the '654 Patent Is *De Minimis* ................ 8

   H.  Motion *in Limine* No. 8:  Defendants Should Be Precluded From Offering Any Evidence Or Testimony On Other Wi-LAN Litigation Not Involving The Toshiba Defendants Or The Patents-In-Suit ............................................................................................................. 9

   I.  Motion *in Limine* No. 9:  Defendants Should Be Precluded From Offering Any Evidence Re Unasserted Prior Art or '654 Patent Prosecution History ........................................... 10

III. CONCLUSION ............................................................................................................... 11

# **TABLE OF AUTHORITIES**

**CASES**

*Fraser Yachts Fla., Inc. v. Milne*,
  2007 U.S. Dist. LEXIS 27546 (S.D. Fla. Apr. 13, 2007) ..........................................................6

*Guzik Technical Enters., Inc. v. W. Digital Corp.*,
  No. 5:11-CV-03786-PSG, 2013 WL 6116129 (N.D. Cal. Nov. 20, 2013) ............................10

*NAACP v. A.A. Arms, Inc.*,
  99 CV 3999(JBW), 2003 WL 2003797 (E.D.N.Y. Apr. 11, 2003) .........................................8

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
  277 F.R.D. 676 (S.D. Fla. 2012) ...............................................................................................9

*Rambus Inc. v. Hynix Semiconductor, Inc.*,
  2008 U.S. Dist. LEXIS 106481 (N.D. Cal. Dec. 29, 2008).......................................................2

*TVT Records v. Island Def Jam Music Grp.*,
  250 F. Supp. 2d 341 (S.D.N.Y. 2003) ....................................................................................10

*Williams v. Consol. City of Jacksonville*,
  No. 3:00-CV-469-J-32, 2006 WL 305916 (M.D. Fla. Feb. 8, 2006) .....................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26......................................................................................................................4

Fed. R. Civ. P. 26(a)(2)(A) .......................................................................................................4

Fed. R. Civ. P. 26(a)(2)(B)-(C) .................................................................................................4

Fed. R. Evid. 26(a)(2)(C) ..........................................................................................................4

Fed. R. Evid. 104(a) ...............................................................................................................6, 7

Fed. R. Evid. 401 ....................................................................................................................6, 9

Fed. R. Evid. 403 ......................................................................................................................9

Fed. R. Evid. 701 ......................................................................................................................4

Local Rule 16(j) ........................................................................................................................1

**I.      INTRODUCTION**

Pursuant to the Court's Order Granting Joint Motion for Entry of Order Setting Additional Due Dates for Pre-Trial Submissions (DE 259) and Local Rule 16(j), Plaintiffs Wi-LAN USA, Inc. and Wi-LAN Inc. (collectively, "Wi-LAN") respectfully move the Court for an order *in limine* (1) precluding certain evidence that Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Electronic Components, Inc. and Toshiba American Information Systems, Inc. (collectively, "Toshiba") may seek to introduce at trial, and (2) for jury instructions as to certain issues in dispute.

II.  ARGUMENT

A.  **<u>Motion *in Limine* No. 1</u>:  Defendants Should Be Precluded From Referring To Wi-LAN In A Derogatory Manner, Including But Not Limited To Referring To Wi-LAN As A "Patent Troll," "Patent Pirate," "Patent Assertion Entity," or "Non-Practicing Entity"**

Wi-LAN respectfully requests, pursuant to 403, that the Court preclude Toshiba from offering any evidence or argument referring to Wi-LAN in a derogatory manner on grounds that such evidence is of no probative value and would be unfairly prejudicial.  Wi-LAN anticipates that Toshiba may attempt to cloud the lawful enforcement of Wi-LAN's patent rights by characterizing Wi-LAN and/or its business model in derogatory, factually inaccurate and misleading ways, including, but not limited to, referring to Wi-LAN as a "patent troll," "patent pirate," "patent assertion entity," "serial patent litigator," or "non-practicing entity."  Founded in 1992, for fourteen years Wi-LAN developed low-cost, high-speed wireless networking technology that was commercialized in millions of wireless networking devices worth billions of dollars.  *See* Declaration of Kent T. Dallow in Support of Plaintiffs' Motions *in Limine*, ¶ 2, Ex. A (hereinafter "Dallow Decl. ¶ __").  Realizing the substantial value of its intellectual property, in 2006, Wi-LAN re-focused its business on licensing patented inventions, including inventions by Wi-LAN inventors.  *Id.*

Recent press coverage and social media have cast as pejorative terms such as "patent troll," "patent assertion entity," and "non-practicing entity," suggesting that the assertion of patent rights by companies engaged substantially or exclusively in licensing activities is negative and bad for our economy.[1]  Permitting Toshiba to refer to Wi-LAN in such a pejorative, misleading manner has no probative value and no proper place in this case.  Moreover, Toshiba's unfair characterization of Wi-LAN in any of the foregoing ways would unfairly bias the jury and be highly prejudicial to Wi-LAN.  *See, e.g., Rambus Inc. v. Hynix Semiconductor, Inc.*, 2008 U.S. Dist. LEXIS 106481, *5-6 (N.D. Cal. Dec. 29, 2008) (ordering all of the parties to refrain from using the term "patent troll" before the jury).

---

[1] *See, e.g.,* http://www.whitehouse.gov/blog/2013/06/04/taking-patent-trolls-protect-american-innovation ("[T]he President explained that patent trolls (known more formally as Patent Assertion Entities, or PAEs) 'don't actually produce anything themselves.  They're just trying to essentially leverage and hijack somebody else's idea and see if they can extort some money out of them.'"); *see also* http://www.nytimes.com/2013/06/05/opinion/make-patent-trolls-pay-in-court.html?_r=1&adxnnl=1&adxnnlx=1387564163-MOxj5X89KqwOSIzKpFCUXQ ("Their business plan is simple: trolls (intellectual-property lawyers use less evocative terms like 'non-practicing entities' and 'patent assertion entities')….").

2

B.    **Motion *in Limine* No. 2**:  **Defendants' Experts Should Be Precluded From Testifying As To The Existence Of Acceptable, Non-Infringing Alternatives**

Wi-LAN anticipates that Toshiba will present argument and elicit testimony from Toshiba experts Clifford Reader and W. Todd Schoettelkotte on the alleged existence of acceptable, non-infringing alternatives to the inventions claimed in asserted U.S. Patent No. 6,359,654 ("'654 patent").  The testimony is offered improperly in an attempt to denigrate the value of the '654 patent technology and artificially support a lower royalty rate in relation to infringement damages.  The anticipated testimony is fatally flawed, and should be excluded, for at least three reasons.

First, the three purported "alternatives" cited by Toshiba's experts appear to be merely hypothetical "examples" and are not supported with any evidence demonstrating that they were in the market or available to the market in the relevant time period.  Second, there is no evidence in the record that the alleged alternatives would deliver similar performance and picture quality at the same cost to manufacture or that the necessary know-how, equipment and experience to use the alleged alternatives was available to Toshiba at the time of infringement.  Third, Dr. Reader admitted in deposition that he never conducted any investigation to determine whether the three alternatives he relies upon are in fact non-infringing and, therefore, "acceptable."  Wi-LAN has already briefed this issue in its pending *Daubert* motion (Dkt. 202), and respectfully requests that all witnesses (fact and expert) be precluded from discussing the issue for the reasons set forth above and therein.  The Court's ruling on Wi-LAN's *Daubert* motion should control the outcome of this motion *in limine*.

    C.    **<u>Motion *in Limine* No. 3</u>: Defendants Should Be Precluded From Offering Any Expert Testimony, Including But Not Limited To Non-Infringement, Invalidity, Acceptable Non-Infringing Alternatives, By Witnesses Who Have Not Submitted An Expert Report or Rule 26(a)(2)(C) Disclosure**

Wi-LAN anticipates that, in violation of the Federal Rules of Civil Procedure and Evidence, Toshiba will argue and elicit testimony from fact witnesses, including but not limited to Himio Yamauchi, Scott Ramirez, Osamu Iwano, Ryuichi Takane and/or Joseph Correa, who were not disclosed as experts pursuant to Fed. R. Civ. P. 26(a)(2)(A) and did not serve expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(B)-(C).[2] Rule 701 of the Federal Rules of Evidence limits lay witnesses to testifying only about opinions or inferences that are: "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *See* Fed. R. Evid. 701.[3] Wi-LAN is concerned that Toshiba will attempt to introduce employee testimony including non-infringement (*e.g.*, that the accused products operate in a way that the witness contends does not infringe the patent), invalidity (*e.g.*, that the alleged prior art renders the '654 patent "anticipated" or "obvious,") and damages (*e.g.*, the existence of acceptable, non-infringing alternatives support of a lower royalty). The specialized, technical testimony on how interlaced-to-progressive signal conversion works clearly falls outside the scope of Rule 701 and is the substance of anticipated expert testimony by the parties' retained and properly identified experts. For at least these reasons, the Court should exclude lay witnesses from testifying on the issues of: (1) non-infringement, (2) invalidity, (3) application of any claim terms or claim construction (in the event this Court deems necessary the construction of the disputed claim terms) to any accused product or prior art, or (4) non-infringing alternatives, from any witness who has not submitted an expert report or Rule 26(a)(2)(C) disclosure.

---

[2] Toshiba's failure to identify such witnesses pursuant to Rule 26 prevented Wi-LAN from determining the scope of their expert testimony by reference to their Rule 26 reports/disclosures or in deposition and has prevented Wi-LAN from filing any *Daubert* motions as to such unidentified witnesses.

[3] Subsection (c) was added to Rule 701 in 2000 to: "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702. By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 … by simply calling an expert witness in the guise of a layperson." Fed. R. Evid. 701, Advisor Committee Notes (citations omitted).

D.     **Motion *in Limine* No. 4:  The Jury Should Be Instructed That Toshiba Had Knowledge of the Patents-in-Suit No Later Than October 15, 2006**

For the reasons detailed in Wi-LAN's Motion to Compel Rule 30(b)(6) Witnesses (Dkt. No. 131) at 9-10 and the parties Joint Status Report (Dkt. No. 224) at 7, the jury should be instructed that Toshiba had knowledge of the patents-in-suit no later than October 15, 2006. During discovery, Toshiba's U.S. subsidiary, TAIS, which is responsible for Toshiba's sales of television products in the U.S., was asked to provide a corporate witness on TAIS's knowledge of the patents-in-suit and the company's efforts to search for and determine such knowledge. TAIS designated Scott Ramirez as its 30(b)(6) designee on these issues.  During his deposition, however, Mr. Ramirez did not know when TAIS learned of the patents.  At that point, counsel for Toshiba took Mr. Ramirez out of the room for two minutes.  When he returned, Mr. Ramirez testified that TAIS did not know of the patents until filing of the suit.  Obviously, Mr. Ramirez was told what to say by his attorney during the deposition.  Further, Mr. Ramirez could neither explain how TAIS knew that was the first time it was aware of the patent nor what searches or reviews were performed to assure it of that fact.  Since that deposition Toshiba and its subsidiary TAIS refused to provide any additional witness to answer these questions.

Defendants' conduct should not be allowed.  Wi-LAN is well within its rights to inquire about the Defendants' knowledge of the patent and what the corporation did to insure it was not aware of the patents prior to filing of the suit.  Indeed, the Defendants are asserting the lack of knowledge as a defense in this case.  Though a 30(b)(6) witness may not have personal knowledge of the topic they are designated for, they cannot parrot whatever the party's attorney wants them to say.  They must "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).  And, that duty includes "prepar[ing]  those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters." *Fraser Yachts Fla., Inc. v. Milne*, 2007 U.S. Dist. LEXIS 27546, *4 (S.D. Fla. Apr. 13, 2007).  Toshiba's outright refusal to provide or prepare a witness for TAIS on this issue has prevented Wi-LAN from determining the extent of Defendants' knowledge. Defendants should not now be allowed to argue that they only had knowledge of the patent no earlier than June or October of 2012 and should instead be deemed to have admitted knowledge since the beginning of the damages period, which is October 15, 2006.

E. **Motion *in Limine* No. 5: Defendant Should Be Precluded From Objecting To The Time Warner Cable Inc.'s ("TWC") Set-Top Box Manuals Obtained from Time Warner's Website As Not Authentic And Inadmissible**

Wi-LAN respectfully requests a pretrial ruling on the admissibility of TWC set-top box manuals ("Manuals") pursuant to Federal Rule of Evidence 104(a). *See* Fed. R. Evid. 104(a) (District courts "must decide any preliminary question about whether … evidence is admissible."). The Manuals were obtained from TWC's website. On May 28, 2013, Wi-LAN served a subpoena for deposition and documents on TWC seeking basic information, namely, the authentication of certain information that Wi-LAN obtained from public sources (mainly TWC's website), such as TWC set-top box manuals and information on the default settings of video signals sent from the set-top box to televisions. Wi-LAN attempted to negotiate this issue with Toshiba and TWC, and offered various proposals, such as offering to accept a declaration or a deposition by written questions in lieu of a deposition. However, Toshiba refused the declaration and deposition. *See* Dkt. 173.[4] Wi-LAN also requested Toshiba's stipulation of the authenticity of the documents, however Toshiba objected. *See* Dkt. 224.

Wi-LAN accused Toshiba of both direct infringement and inducing infringement by others. To prove induced infringement, Wi-LAN must prove that at least one Toshiba U.S. customer directly infringed the '654 patent by operating an accused Toshiba television. To make such demonstration, Wi-LAN is offering these Manuals to show that these set-top boxes are set to receive interlaced signals by default, thereby showing that if a Toshiba customer is using such a set-top box with their Toshiba television, they are directly infringing the '654 patent. Thus, the evidence is relevant as to the determination of Toshiba's induced infringement. *See* Fed. R. Evid. 401. Therefore, Wi-LAN requests that this motion be granted.

---

[4] Wi-LAN's briefing on this subject can be found at Dkt. 177 pp. 1-19.

6

F. **Motion *in Limine* No. 6**: Defendants Should Be Precluded From Objecting To The Customer Call Center Records Obtained From Toshiba And Customer Comments Obtained from Toshiba's Website As Not Authentic and Inadmissible

Wi-LAN respectfully requests a pretrial ruling on the admissibility of Toshiba's customer call center records and the customer comments obtained from Toshiba's website pursuant to Federal Rule of Evidence 104(a). *See* Fed. R. Evid. 104(a) (District courts "must decide any preliminary question about whether … evidence is admissible."). Plaintiffs request this ruling in advance of trial in order to streamline the presentation of evidence at trial and to avoid needless delays for the jury. Wi-LAN accused Toshiba of both direct infringement and inducing infringement by others. To prove induced infringement, Wi-LAN must demonstrate that at least one Toshiba U.S. customer directly infringed the '654 patent by operating an accused Toshiba television. Toshiba produced certain customer call center (*i.e.,* customer support service) records and customer comments posted to Toshiba's website which show that that Toshiba customers are using their Toshiba televisions to tune to interlaced signals (and therefore directly infringe the '654 patent).[5] Toshiba has since agreed that it "will not dispute that the call center records are maintained by Toshiba" and that they "will not object to them as hearsay." *See* Dallow Decl., ¶ 3, Ex. B. However, Toshiba refused a similar agreement to the customer comments obtained from Toshiba's website.[6] Because these comments are relevant to the determination of Toshiba's induced infringement of the '654 patent, Wi-LAN requests that the Court permit entry into evidence of all customer call center records obtained by Toshiba and customer comments posted on Toshiba's website. *See NAACP v. A.A. Arms, Inc.*, 99 CV 3999(JBW), 2003 WL 2003797 (E.D.N.Y. Apr. 11, 2003) (denying motion *in limine* and admitting pages from moving parties' websites).

---

[5] Toshiba's Rule 30(b)(6) witness on the topic of call center records and the website comments, James Luckas, was not knowledgeable on these subjects. Other Toshiba witnesses identified Rhonda Watkins, head of customer call center operations for Toshiba in the U.S., as knowledgeable on these topics. Wi-LAN duly notice Ms. Watkins deposition on June 20, 2013, but Toshiba refused to produce Ms. Watkins for deposition. Wi-LAN's briefing on this subject can be found at Dkt. 131 p. 11, Dkt. 156 pp. 1-3, Dkt. 161 pp. 4-5, Dkt. 174 pp. 5-6, and Dkt. 189 pp. 6-7.

[6] Toshiba's only basis for refusing this reasonable compromise is because people purportedly "may enter comments on Toshiba's website without showing that they have purchased or own a Toshiba product." *See* Dallow Decl., ¶ 3, Ex. B. However, as seen from Toshiba's testimony and by our own review of Toshiba's customer support site, the site requires consumers to register with Toshiba community forums before being able to post comments to these forums. *Id.*

7

G. **Motion *in Limine* No. 7**: For Jury Instruction That Toshiba Failed To Produce A Witness On Testing And Should Be Considered To Have Tested All Accused Televisions Sold In The U.S. With Interlaced Signals And That Defendants Should Be Precluded from Arguing That Toshiba's Direct Infringement of the '654 Patent Is *De Minimis*

For the reasons detailed in Wi-LAN's Motions to Compel (Dkt. 131 at 15-16, 19-20; Dkt. 156 at 4-5; Dkt. 161 at 7-9; Dkt. 174 at 8-10; and Dkt. 189 at 8-10) and the parties' Joint Status Report (Dkt. 224 at 3-4), the jury should be instructed that Defendants tested in the U.S. all accused products with interlaced signals that cause the accused interlaced-to-progressive ("IP") conversion. During discovery, Defendants' witnesses were unable to explain how or what type of testing Defendants performed on its televisions. This is important because the '654 patent claims a method of IP conversion that is practiced when Toshiba televisions use commonly occurring interlaced television signals to watch video with rapid and unpredictable motion. The extent of Defendants' testing and the type of signals used are relevant to Wi-LAN's claim that Defendants directly infringed the method claims and in relation to damages.

Defendants' witnesses all pointed to a unit in Tennessee, and specifically to Dan Crook, as the person most knowledgeable of that testing. Wi-LAN noticed the deposition of Mr. Crook and demanded a prepared corporate witness, but Defendants refused. Instead, Defendants assert that their attorney-prepared interrogatory response is adequate in lieu of a witness. This is incorrect. Wi-LAN has a right to determine the extent of Defendants infringement through a live witness, especially one that its employees say is the most knowledgeable. *See QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012) ("[A] corporation cannot point to interrogatory answers in lieu of producing a live in-person corporate representative designee.")

Moreover, Defendants' interrogatory response is limited to a subset of television models and is limited to "pre-mass production samples." Defendants further fail to provide specifics on the extent of testing or explain how certain test videos are used. Wi-LAN should have been able to test not only the veracity of the limited interrogatory response but ask questions about Defendants testing documents and programs. Because Wi-LAN was prevented from doing so during discovery, this Court should instruct the jury that Toshiba's testing would have shown that it tested each television with interlaced signals that would engage the IP conversion features that Wi-LAN accuses of infringing.

8

H.  **Motion *in Limine* No. 8:  Defendants Should Be Precluded From Offering Any Evidence Or Testimony On Other Wi-LAN Litigation Not Involving The Toshiba Defendants Or The Patents-In-Suit**

Any evidence of other litigation in which Wi-LAN is, or has been, involved in that does not involve the Toshiba defendants or the patents-in-suit is irrelevant and prejudicial to Wi-LAN, and should thus be excluded.  Evidence of such other litigation is of no consequence in the present action and is not probative in the determination of any factual issue, and thus not relevant pursuant to Fed. R. Evid. 401.  *See Williams v. Consol. City of Jacksonville*, No. 3:00-CV-469-J-32, 2006 WL 305916, *10 (M.D. Fla. Feb. 8, 2006) (precluding prior litigation evidence as "a collateral matter, which could confuse the issues, mislead the jury, and lead to a mini-trial on collateral issues causing undue delay in the trial of this case which would not relate to the" claim at issue).  Moreover, in addition to irrelevance, any negligible probative value such evidence may have in this case is substantially outweighed by the substantial risk of unfair prejudice to Wi-LAN, confusing the issues, misleading the jury, undue delay, and wasting time, and should therefore be excluded under Fed. R. Evid. 403.  *See Guzik Technical Enters., Inc. v. W. Digital Corp.*, No. 5:11-CV-03786-PSG, 2013 WL 6116129, *6 (N.D. Cal. Nov. 20, 2013) (precluding prior litigation evidence because its probative value was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury"); *TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 345–46 (S.D.N.Y. 2003) (precluding prior litigation evidence that is "irrelevant, unduly prejudicial and not probative and distracting to the jury").

I. **<u>Motion *in Limine* No. 9</u>:  Defendants Should Be Precluded From Offering Any Evidence Re Unasserted Prior Art or '654 Patent Prosecution History**

Defendants' exhibit list for trial includes the file history and multiple prior art references that were not asserted by Defendants in its invalidity theories anticipation or obviousness. Indeed, Defendants' invalidity contentions and expert report assert only 10 prior art references as anticipating or rendering obvious the asserted claims of the '654 patent and 10 prior art references as anticipating or rendering obvious the '889 patent. However, on December 11, 2013, Defendants notified Wi-LAN that it was asserting 102 and 122 prior art references and products against the '654 and '889 patents, respectively, and would use them "to show anticipation and/or obviousness" and "as evidence of inherency." Several of these references appear on Defendants' exhibit list.

Wi-LAN asks this court to preclude Defendants from introducing or asserting prior art references that were not identified in the anticipation or obviousness theories found in its contentions. Presenting documents or elements of documents as "prior art" that were not asserted under any anticipation or obviousness theory is prejudicial to Wi-LAN because it has had no opportunity to rebut or present expert testimony on such theories. Furthermore, it would be prejudicial and confusing for the jury to be presented with prior art references that are not being formally asserted under any anticipation or obviousness theories.

Moreover, Wi-LAN asks that the court exclude Defendants from relying on the prosecution history of the patents at trial. While the prosecution history may be relevant to Defendants' claim construction position, that is an issue of law for the judge, not the jury. It is true that several of the additional prior art references on Defendants' exhibit list were considered by the examiner and Defendants' expert recounts the prosecution history in his report; however, the Defendants' do not assert the prior art considered by the examiner as anticipating or rendering obvious the claims of the patents-in-suit. Instead, Wi-LAN is concerned that Defendants may attempt to back door an invalidity theory using previously unasserted prior art considered by the patent examiner or confuse the jury about what was and was not known in the art through statements about art Defendants have not asserted for invalidity purposes.

Such evidence is irrelevant, hearsay, prejudicial, confusing, and late. Accordingly, the evidence should be excluded or in the alternative the jury should be instructed that it should not be considered as prior art for purposes of anticipation or obviousness.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs Wi-LAN USA, Inc. and Wi-LAN Inc. respectfully request that the Court grant each of Wi-LAN's motions *in limine*.

Dated:  December 20, 2013

Respectfully submitted,

*Attorneys for the Plaintiffs:*

CARLSON & LEWITTES, P.A.

By:  s/ *Curtis Carlson*
   Curtis Carlson, Fla. Bar. No. 236640
   1200 Suntrust International Center
   One Southeast Third Avenue
   Miami, FL  33131
   Telephone:  305-372-9700
   Facsimile:  305-372-8265
   E-mail:  carlson@carlson-law.net

**OF COUNSEL**

KILPATRICK TOWNSEND & STOCKTON LLP

David E. Sipiora
Brian P. O'Donnell
Charles A. Pannell
Kent T. Dallow
1400 Wewatta Street, Suite 600
Denver, CO  80202
Telephone: 303-571-4000

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2013, a true and correct copy of the foregoing was filed and served with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to the following:

Doris Johnson Hines
Joyce Craig
Anthony Del Monaco
Emmanuel Azih
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 408-4000
Fax: (202) 408-4400
Email: dori.hines@finnegan.com; joyce.craig@finnegan.com; anthony.delmonaco@finnegan.com; emmanuel.azih@finnegan.com

Terri Meyers
KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.
Miami Center - 17th Floor
Miami, FL 33131
Tel: (305) 379-9000
Fax: (305) 379-3428
Email: tmeyers@klugerkaplan.com

/s   *Curtis Carlson*
     Curtis Carlson